UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
NEIL GONZALEZ,

                Plaintiffs,                14 Civ. 3299 (ER)

   -against-                                      COMPLAINT

METRO-NORTH COMMUTER RAILROAD,

                Defendant.
---------------------------------------------------------X

<u>PLAINTIFF DEMANDS TRIAL BY JURY</u>

      Plaintiff, by his attorneys, Flynn & Wietzke, PC, complains of the defendant and alleges:

AS AND FOR A FIRST CAUSE OF ACTION AGAINST
DEFENDANT METRO-NORTH COMMUTER RAILROAD
BY PLAINTIFF NEIL GONZALEZ

      <u>FIRST</u>:  The plaintiff, Neil Gonzalez, brings this action against the defendant for violations of the Federal Rail Safety Act, 49 U.S.C. Section 20109.

      <u>SECOND</u>:   This Court has subject matter jurisdiction in this case pursuant to the Federal Railroad Safety Act, 49 U.S.C. Section 20109(d)(3) (FRSA).

      <u>THIRD</u>:  The plaintiff is of Bronx County, New York.

      <u>FOURTH</u>:  The defendant is a railroad carrier providing railroad transportation, with a usual place of business in New York City, New York.

      <u>FIFTH</u>:  During all times herein mentioned, the defendant is engaged in interstate commerce by providing railroad transportation between the states of New York and Connecticut.

      <u>SIXTH</u>:  At the time of the defendant's FRSA violations, the plaintiff was employed by the defendant as a third rail power shop steward, and qualified as an employee within the meaning of 49 U.S.C. Section 20109.

SEVENTH:  In or about April, 2013, plaintiff approached his supervisor regarding the need for safety clothing for members of plaintiff's department.

EIGHTH:  In May, 2013, plaintiff met with defendant Employee Relations Department regarding safety concerns.

NINTH:  On June 20, 2013, plaintiff again met with defendant's Employee Relation Department regarding safety issues that had been brought to him by other members of his department.

TENTH:  In July, 2013, plaintiff approached his supervisor regarding air quality safety concerns in the locker room used by plaintiff and his co-workers.

ELEVENTH:  On July 30, 2013, plaintiff visited the locker room with a member of the Employee Relations Department at which point the Employee Relations employee took photographs of the safety hazards being presented by plaintiff.  That visit was made in the presence of plaintiff's foreman and another co-worker.  That same day another foreman approached the foreman who participated in the walk through of the locker room about the photographs being taken by the Employee Relations Department.

TWELFTH:  On August 4, 2013, a supervisor approached plaintiff and advised him that he needed to be careful who his friends were.

THIRTEENTH:  On August 5, 2013, a manager in plaintiff's department approached plaintiff's foreman and gave him a warning about where to swipe in when reporting for work at the beginning of a shift.

FOURTEENTH:  On August 6, 2013, defendant presented plaintiff with a letter removing him from service without explanation.

FIFTEENTH:  On August 8, 2013 plaintiff was presented with charges alleging violation of company rules for 1) refusing to accept an over-time assignment; and, 2) for

swiping in at an unauthorized location when reporting for work.   Thereafter, plaintiff was kept out of service for a month without justification.

SIXTEENTH:  After being taken out of service, plaintiff again went to the Employee Relations Department where an investigation was done to determine whether plaintiff was the only employee swiping at the 125th Street Time Clock.  It was confirmed that many employees other than plaintiff engaged in the exact same conduct, some much more often.  This fact was brought to the attention of plaintiff's supervisor.

SEVENTEENTH:  Plaintiff's Supervisor attended a "pre-trial conference" where plaintiff was offered an opportunity to resign if he plead guilty to the charges or else he would be terminated.

EIGHTEENTH:  Plaintiff refused to plead "guilty".

NINTEENTH:  Plaintiff was ultimately returned to work pending the hearing on the charges.

TWENTIETH:  Defendant went forward with the hearing against plaintiff several months later.  The day of the hearing, defendant verbally dropped the charges which were relied upon to remove plaintiff from service.

TWENTY-FIRST:  Plaintiff requested a written confirmation that those charges had been withdrawn and has to date still never received one.

TWENTY-SECOND:  Defendant moved forward with the charges for refusing over-time despite plaintiff's foreman testifying that no order was ever given to plaintiff.  Defendant did not rule on the charges against plaintiff for several months and plaintiff has yet to receive a written outcome of those charges.

TWENTY-THIRD:  As a result of defendant's conduct, the plaintiff suffered various economic harms as well as emotional distress and mental anguish.

AS AND FOR A SECOND CAUSE OF ACTION AGAINST
DEFENDANT METRO-NORTH COMMUTER RAILROAD
<u>BY PLAINTIFF NEIL GONZALEZ</u>

<u>TWENTY-FOURTH</u>:  The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs FIRST through TWENTY-THIRD of this Complaint with the same force and effect as if set forth under this cause of action.

<u>TWENTY-FIFTH</u>:  The plaintiff engaged in protected activity under the FRSA when he reported safety hazards to his supervisor, his foreman and the defendant's Employee Relations Department.

<u>TWENTY-SIXTH</u>:  The defendant had knowledge of all the protected activities referenced above.

<u>TWENTY-SEVENTH</u>:  The defendant took adverse or unfavorable actions against the plaintiff in whole or in part due to his protected activities when it penalized, harassed and intimidated plaintiff in connection therewith as a result of the protected activity.  In so doing, the defendant acted with reckless disregard for the law and with complete indifference to the plaintiff's rights under the FRSA.

<u>TWENTH-EIGHTH</u>:  On August 29, 2013, plaintiff filed a FRSA Complaint with the Secretary of Labor's Region 2 OSHA Whistleblower Office. (Exhibit 1).  That was within 180 days from the date the plaintiff became aware of the defendant Railroad's intent to take adverse or unfavorable personnel action against him, i.e. when they removed him from service, withheld his paycheck, issued charges against him which they knew to be fraudulent, threatened him with termination, intimidated him in an effort to get him to resign; went forward with a hearing on the fraudulent charges, delayed the decision on the hearing.

<u>TWENTY-NINTH</u>:  The Regional OSHA Whistleblower Office commenced its investigation, and the plaintiff fully cooperated with OSHA's investigation.  However, OSHA

did not issue a final decision within 210 days after the filing of the FRSA Complaint. The delay was not due to any bad faith on the part of the plaintiff.

THIRTIETH:  Pursuant to Section (d)(3) of the FRSA, the plaintiff has a statutory right to bring an original action in a United States district court for a jury trial regarding the Railroad's violations of the FRSA. 49 U.S.C. Section 20109(d)(3).  On March 28, 2014, the plaintiff filed with the US Department of Labor a Notice of Intent to File Original Action. (Exhibit 2)

THIRTY-FIRST:  Pursuant to FRSA 49 U.S.C. 20109(d)(3), the plaintiff now is bringing this original action at law and equity for de novo review in this United States District Court, which Court has jurisdiction over this FRSA action without regard to the amount in controversy.

WHEREFORE, in order to encourage employees to freely report all injuries and safety concerns without fear of any retaliation, thereby ensuring the Federal Rail Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad operations, the plaintiff demands a Judgment under the FRSA for all relief necessary to make him whole, including but not limited to: expungement of all references to disciplinary action related to plaintiff's reporting of safety hazard; lost benefits with interest; lost wages with interest; compensatory damages for economic losses due to defendant's conduct; compensatory damages for mental anguish and emotional distress due to defendant's conduct; the statutory maximum of punitive damages; and special damages for all litigation costs including expert witness fees and attorney fees.

WHEREFORE, plaintiff Neil Gonzalez demands judgment against the defendant on the First Cause of Action in the sum of SEVEN HUNDRED FIFTY THOUSAND ($750,000.00) DOLLARS; plaintiff Neil Gonzalez demands judgment against the defendant

on the Second Cause of Action in the sum of SEVEN HUNDRED FIFTY THOUSAND ($750,000.00) DOLLARS; together with the costs and disbursements of this action.

                                          Flynn & Wietzke, PC
                                          Attorneys for Plaintiff
                                          1205 Franklin Avenue
                                          Garden City, NY 11530
                                          (516) 877-1234

                                          By:_____
                                             MARC T. WIETZKE (MW1551)